[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 24, 2010
JOHN LEY
CLERK

No. 09-14767
Non-Argument Calendar

_____

D. C. Docket No. 08-00470-CR-RDP-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICO RENDALE CARTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(May 24, 2010)

Before BIRCH, WILSON and MARTIN, Circuit Judges.

PER CURIAM:

Rico Rendale Carter appeals his 87-month prison sentence imposed for

being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, he argues that the district court erred in varying upward from the advisory guidelines range of 51-63 months of imprisonment. We AFFIRM.

## I. BACKGROUND

On 18 October 2007, police in Birmingham, Alabama responded to a 911 call and found Carter outside his girlfriend's house with a gun, threatening to shoot her and her two children. Doc. 49 at 32, 94, 101-02; Doc. 50 at 17. The responding officer ordered Carter to the ground and told him to place his hands behind his head. Doc. 50 at 19. The officer approached Carter, took Carter's gun, and secured the gun in his duty belt. *Id.* As the officer attempted to handcuff Carter, Carter grabbed the officer's arm and an altercation ensued, during which the officer sprayed mace in Carter's face, struck Carter with his baton, and pushed Carter into the side of the house. *Id.* at 19-20. Carter ultimately escaped and fled the scene. *Id.* at 20-21. Unable to apprehend Carter, the officer returned to the apartment and spoke to the victim, who told the officer that Carter had beaten her and held her and her children inside the house for fourteen to fifteen hours. *Id.* at 22. Police returned to Carter's girlfriend's apartment the following day after receiving a call that the apartment's windows had been broken. *Id.* at 5. The officer who responded to the call testified at trial that as he was taking Carter's

2

girlfriend's statement, Carter came around from the side of the apartment, yelling, "[H]ere I am, I did it, come and get me." *Id.* at 6. Carter screamed obscenities at both the officer and his girlfriend as he fled down the street. *Id.*

Carter was subsequently arrested and indicted on one count of being a felon in possession of a firearm and was found guilty by a jury in May 2009. Doc. 1; Doc. 50 at 172. At the sentencing hearing, the district court determined that Carter's offense level was 20, which, with a criminal history category of IV,[1] yielded an advisory guidelines range of 51-63 months of imprisonment. Doc. 51 at 2, 8. The government requested an upward variance, arguing that the circumstances of the offense, Carter's past criminal history, which included multiple incidents of resisting arrest, and the need to deter Carter from committing future crimes, warranted imposition of the ten-year statutory maximum sentence under 18 U.S.C. § 924(a)(2). *Id.* at 9-10, 12-16. Carter responded that he was innocent and that the police officer and victim had lied during their testimony at trial. *Id.* at 20-21.

The district court found that while the statutory maximum sentence was not warranted, a sentence within the advisory guidelines range was unreasonable "in

---

[1] According to the presentence investigation report ("PSI"), Carter previously had been convicted of: (1) receiving stolen property in 1996; (2) second-degree assault in 1996; and (3) second-degree criminal mischief, resisting arrest, and third-degree assault in 2004.

light of the circumstances and nature of th[e] offense, and the history and characteristics of the defendant." *Id.* at 25. In addition to those factors, the court noted Carter's "conduct after the date in question, in which he was observed in the area after vandalism of the victim's house and taunted the police. That is consistent with his conduct toward law enforcement officials in the past in other cases." *Id.* at 26. The district court further found that, given Carter's criminal history, the sentence imposed was necessary to protect the public from Carter's future crimes. *Id.* at 27. This appeal followed. Doc. 43, 47.

## II. DISCUSSION

We review a district court's sentence for reasonableness under a deferential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007). The party challenging that sentence "bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)." *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam). Those factors include, *inter alia*: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to (a) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (b) afford adequate deterrence to criminal conduct; and (c) protect the public from further

4

crimes of the defendant; (3) the kinds of sentences available; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553(a) (2010). Although a district court need not discuss each § 3553(a) factor, it must, when it imposes a sentence outside the applicable guidelines range, explain why it has done so. *United States v. Pugh*, 515 F.3d 1179, 1191 n.8. (11th Cir. 2008). *See also Gall*, 552 U.S. at 50, 128 S. Ct. at 597 (stating that where a sentencing judge imposes an outside-guidelines sentence, "he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance[,]" and "must adequately explain the chosen sentence to allow for meaningful appellate review . . . . ").

The record reflects that the district court listened to the parties' arguments, considered the evidence in the record, and addressed the § 3553(a) factors. Specifically, the court noted the nature and circumstances of the offense and Carter's criminal history, and determined that the sentence imposed was necessary both to protect the public and to deter Carter from committing crimes in the future. We find that the court's statement of reasons for imposing a sentence outside the guidelines range was sufficient and that the sentence imposed was substantively reasonable.

**AFFIRMED.**